# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GEORGE BESTMAN**<br>*Plaintiff*,<br>v.<br>**CITY OF PHILADELPHIA**<br>*Defendant*. | **CIVIL ACTION NO. 25-709** |

## MEMORANDUM

**BAYLSON, J.**                                                                                                              **April 17, 2025**

In this § 1983 action, George Bestman ("Plaintiff") asserts two claims against the City of Philadelphia (the "City" or "Defendant") for alleged constitutional violations when the City's Department of Licenses and Inspections ("L&I") allegedly demolished his property without providing Plaintiff with constitutionally adequate notice or an opportunity to remediate the issues to halt the demolition. Presently before this Court is the City's Motion to Dismiss. Though Plaintiff alleges troubling circumstances, for the following reasons, the City's Motion is **GRANTED without prejudice** to Plaintiff filing an amended complaint and pleading additional specific factual allegations that adequately support municipal liability against the City and how Plaintiff was injured.

## I.      RELEVANT FACTUAL BACKGROUND

Plaintiff is an individual who lives in Connecticut and owns property in Philadelphia. Compl. (ECF 1) at ¶¶ 16–17. Plaintiff purchased the Philadelphia property on August 26, 2022, and hired a contractor to make repairs. Id., ¶¶ 24–25. The City informed Plaintiff that prior to performing work, Plaintiff needed to obtain a make-safe permit and submit plans to address

existing code violations on the property. Id., ¶¶ 29–30. Plaintiff hired an engineer and architect, as required, and worked with L&I to remedy preexisting violations on the property. Id., ¶ 31.

According to the Complaint, an engineering firm performed a make-safe inspection of the property on November 3, 2022, but did not find that any part of the property was "imminently dangerous." Id., ¶ 32. At some point thereafter while Plaintiff was preparing to submit supplemental information to L&I regarding work plans, Plaintiff was informed by the City that a portion of an exterior side wall on the property had collapsed. Id., ¶ 34. The Complaint alleges on information and belief that on February 13, 2023, L&I dispatched an inspector to the property who immediately determined that the damaged wall presented an imminent danger. Id., ¶ 35.

That same day, on February 13, 2023, Plaintiff received a call from L&I at 11:44 a.m. informing him that his property was being put on a "demolition list." Id., ¶ 37. However, the Complaint alleges that the caller from L&I did not provide notice of any specific repairs that were required, nor that demolition was to commence immediately. Id., ¶¶ 36, 57. Later that day, L&I allegedly put the property up for demolition, and by approximately 3:00 p.m. on February 13, 2023, demolition had begun without sufficient time for Plaintiff to take any steps to stop the demolition. Id. The demolition was completed the following day, on February 14, 2023. Id.

Plaintiff alleges that he did not receive any written notice of the demolition until February 18, 2023, several days after the property had already been demolished. Id., ¶ 45. The notice allegedly stated that L&I inspected the property on February 13, 2023, determined the property to be "imminently dangerous," and ordered Plaintiff to make repairs and take corrective action by February 19, 2023. Id., ¶ 46. The notice also allegedly provided Plaintiff until February 19, 2023 to appeal the imminently dangerous determination. Id. However, the Complaint alleges Plaintiff was deprived of any opportunity to make necessary repairs or appeal the determination because

demolition had already begun nearly a week before he received the notice. Id., ¶¶ 46–47. The Complaint alleges that the City's decision to demolish Plaintiff's property was without "competent evidence that an emergency existed" and was made without any independent testing to determine the emergency conditions. Id. ¶¶ 50–51.

The Complaint alleges that the City has a custom of demolishing properties for alleged code violations and reasons of safety without providing property owners a meaningful opportunity to halt the demolition or delay it to remediate any claimed defects. Id., ¶¶ 10, 58.

## II. PROCEDURAL HISTORY

Plaintiff filed a Complaint against the City on February 10, 2025, ECF 1, alleging two causes of action pursuant to 42 U.S.C. § 1983:

1. **Count I**: Violation of Plaintiff's due process rights pursuant to the Fourteenth Amendment; and

2. **Count II**: Violation of Plaintiff's rights pursuant to the Fourth Amendment.

On March 12, 2025, the City filed a Motion to Dismiss for failure to state a claim. ECF 8. Plaintiff responded on March 25, 2025, ECF 10, and the City replied on April 1, 2025. ECF 12.

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (citing Twombly, 550 U.S. at 555), and so it will not suffice if it is "devoid of further factual enhancement," Iqbal, 556 U.S. at 678 (citation omitted). Thus, in considering a

motion to dismiss, the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff, Doe v. Univ. of Sciences, 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume that [the plaintiff] can prove facts that it has not alleged[,]" Twombly, 550 U.S. at 563 n.8 (quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983)).

## IV. DISCUSSION

Plaintiff brings claims under 42 U.S.C. § 1983 against the City, alleging that the City violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments by depriving Plaintiff of notice and opportunity to remedy alleged property code violations prior to demolishing Plaintiff's property.

The U.S. Supreme Court has stated that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"—that is, a municipality cannot be held liable for the attenuated actions of its employees. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). Thus, to plead a claim for municipal liability, a plaintiff must show (1) a deprivation of a federal right, City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); (2) a relevant policy or custom attributable to the City, Monell, 436 U.S. at 690–91; and (3) "a direct causal link" between the municipal action and the deprivation of the federal right, Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997). The municipality is liable when either the policy or custom itself violates the Constitution or is the "moving force" behind the constitutional violation. Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014).

### A. The Complaint Sufficiently Pleads Deprivation of a Constitutional Right

The Court finds that the Complaint sufficiently alleges that L&I's demolition of Plaintiff's property plausibly violated Plaintiff's Fourth and Fourteenth Amendment rights.

4

In assessing whether the Complaint states a claim pursuant to § 1983 for deprivation of procedural due process (Count I), the Court considers whether "the asserted interests are encompassed within the fourteenth amendment's protection of life, liberty, or property, and (2) whether the procedures available provided the plaintiff with due process of law." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (citations and internal quotation marks omitted). "Due process does not require that a property owner receive actual notice before the government may take his property," Jones v. Flowers, 547 U.S. 220, 226 (2006), but notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them opportunity to present their objections," Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Further, as it pertains to Count II's claim under the Fourth Amendment, the government seizes property when "there is some meaningful interference with an individual's possessory interests in that property." Soldal v. Cook Cnty., Ill., 506 U.S. 56, 71 (1992) (citation and internal quotation marks omitted). Such a seizure violates the Fourth Amendment if the seizure was unreasonable, an analysis which requires a "careful balancing of governmental and private interests." Id. at 71 (quoting New Jersey v. T.L.O., 469 U.S. 325, 341 (1985)).

The City contends that its policies comport with constitutional requirements under the Fourth and Fourteenth Amendments where the property at issue is in an "imminently dangerous" condition and emergency action is necessary, as found by other judges in this District.[1] ECF 8 at 4–9. According to the City, the Complaint's own allegations demonstrate that the property was in an "imminently dangerous" condition at the time of the demolition, or at least that City officials

---

[1] Notably, Plaintiff cites cases decided at summary judgment after discovery and full review of the evidence and relevant City policies. See, e.g., Win & Son, Inc. v. City of Philadelphia, 162 F. Supp. 3d 449, 461 (E.D. Pa. 2016) (McHugh, J.); Johnson v. City of Philadelphia, No. 19-1591, 2020 WL 2933853, at *9 (E.D. Pa. June 3, 2020) (Marston, J.); Madar v. City of Philadelphia, No. 19-6033, 2021 WL 2156362, *10 (E.D. Pa. May 27, 2021) (Goldberg, C.J.).

reasonably believed the property was in an "imminently dangerous" condition, and thus the Complaint does not point to any specific policy or custom that allegedly violated Plaintiff's constitutional rights. Id. at 7.

But whether the City's policies adequately guard against deprivations of procedural due process in violation of the Fourteenth Amendment or unreasonable seizures of property in violation of the Fourth Amendment is an inquiry that expands beyond the scope of this Court's review on a motion to dismiss and hinges, in part, on a factual issue of whether the property was "imminently dangerous." Plaintiff challenges the L&I inspector's "imminently dangerous" determination, alleging that the City deemed the property "imminently dangerous" "without conducting any independent testing to determine whether the building was in imminent danger of collapse," and that the City had "a policy of employing the curbside bid process to demolish properties without meaningful notice in the absence of an emergency." Compl. ¶¶ 49–51. At this stage, the Complaint sufficiently alleges deprivation of a federal right.

### B. The Complaint Does Not Sufficiently Plead A Policy Or Custom

Because Plaintiff brings a Monell claim against the City, Plaintiff must also allege that "the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom," Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996), and that the municipal "government's policy or custom … inflict[ed] the injury" in question," Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (quoting Monell, 436 U.S. at 694); see also City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985) (holding that "[p]roof of a single incident of unconstitutional activity" by a municipal employee is "not sufficient to impose liability under Monell" unless it was caused by an unconstitutional municipal policy which can be attributed to a municipal policymaker).

6

The Complaint here, however, does not sufficiently allege that Plaintiff's constitutional injury was caused by a City policy or custom.

1. **Policy**

Aside from one conclusory allegation, the Complaint does not allege facts about any City policy with specificity which allegedly caused Plaintiff's injury. The Complaint alleges that the City had a "policy of employing the curbside bid process to demolish properties without meaningful notice in the absence of an emergency." Compl. ¶ 49. But the only alleged policies identified in the Complaint contradict this conclusory allegation. A few paragraphs later, the Complaint cites written policies and alleges that these policies "require that, prior to soliciting bids for demolition, the City's inspector is required to provide the owner with written notice of the intent to demolish and provide the owner an opportunity to accept or reject the order to demolish" and that "the Philadelphia Codes and Field Manual instructs the City's agent to take reasonable measures to ensure the record owner of the property received the written notice prior to demolition." Compl. ¶¶ 59–60. Plaintiff must allege specific facts of how this policy caused Plaintiff injury.

2. **Custom**

Though the Complaint identifies a "custom" that allegedly caused Plaintiff injury, the pleading is insufficient to support a Monell claim. The Complaint alleges that "[t]he City's decision to demolish the Property was made in accordance with the City's then-custom, and practice, which authorized the City, through L&I, to make a decision to demolish a property it deemed 'dangerous'" and then very shortly thereafter begin demolition "where it was unreasonable to believe that an emergency demolition was necessary." Id. ¶ 58. Plaintiff's injuries were allegedly caused by the City's custom or practice of "precipitously demolish[ing] properties for

7

alleged code violations and reasons of safety without providing property owners a meaningful opportunity to halt the demolition, or delay it to remediate any claimed defects." Id., ¶ 10; see also id., ¶¶ 58–60. And in addition to identifying the alleged custom or practice, the Complaint cites to three cases from this District addressing the City's demolition of property—Gordon v. City of Philadelphia, No. 07-5039, 2009 WL 2710247 (E.D. Pa. Aug. 28, 2009) (Tucker, J.), Bullard v. City of Philadelphia, 847 F. Supp. 2d 711 (E.D. Pa. 2012) (Rufe, J.), and Dvortsova v. City of Philadelphia, 585 F. Supp.3d 723 (E.D. Pa. 2022) (Pappert, J.)—in which those Courts found evidence of such a custom or practice.[2] Compl. ¶ 49.

But the Third Circuit has cautioned that "[a]lthough a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss." Est. of Roman, 914 F.3d at 798. The Complaint cannot survive dismissal even at this early stage because the Complaint does not identify or even reference any municipal policymaker, which is fatal to the Monell claim. McTernan v. City of York, 564 F.3d 636, 658–59 (3d Cir. 2009) ("Equally fatal, the four allegations in the complaint relevant to McTernan's Monell claim fail to allege conduct by a municipal decisionmaker."). While Plaintiff need not "identify a responsible decisionmaker in his pleadings" nor "prove that the custom had the City's formal approval," Est. of Roman, 914 F.3d at 798, the Complaint must identify some inferential "link between the challenged [action] and a municipal decisionmaker," McTernan, 564 F.3d at 659; see also Brown, 520 U.S. at 415 ("Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights.").

---

[2] The Complaint does no more than merely cite these three cases.

Here, the Complaint only identifies the actions of an L&I inspector who deemed the property "imminently dangerous" (Compl. ¶ 35) and another L&I employee who called Plaintiff on February 13, 2025 to notify Plaintiff of the then-impending demolition (Compl. ¶ 37), but the Complaint does not allege that any municipal decisionmaker had knowledge of such a custom, or that the custom alleged is a practice "so permanent and well settled as to have the force of law" such that it can be "ascrib[ed] to municipal decisionmakers." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citations and internal quotation marks omitted); see also McTernan, 564 F.3d at 659 ("The complaint alleges nothing more than directives issued *ad hoc* by individual officers, without reference to any formal administrative or policy channels."). Plaintiff must also allege specific facts of how he was injured.

## V.  CONCLUSION

For the foregoing reasons, the City's Motion is **GRANTED without prejudice** to Plaintiff filing an amended complaint and pleading additional specific factual allegations that adequately support municipal liability against the City and how Plaintiff was injured. An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 25\25-709 Bestman v City of Phila\25cv709 Memo re MTD.docx